**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

Dated: August 13, 2007

_____
ROBERT C. MCGUIRE
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| JAVIER TAMEZ AND | § | CASE NO. 07-60047-RCM |
| DORIE MIRABEL TAMEZ, | § | |
| Debtors. | § | CHAPTER 7 |

### MEMORANDUM OPINION DENYING UNITED STATES TRUSTEE'S MOTION TO DISMISS THE CASE PURSUANT TO 11 U.S.C. § 707(b)

On August 2, 2007, the Court held a hearing on the United States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b) filed March 28, 2007 (Doc. #13). The Debtor filed a response in opposition on April 13, 2007 (Doc. #15). For various reasons, the hearing on the pleadings was reset several times and then held August 2, 2007. The United States Trustee ("UST") and the Debtors, both represented by counsel, appeared at the hearing.

The UST moves for dismissal of this case pursuant to 11 U.S.C. § 707(b)(1) because the Debtor's financial situation results in a presumption of abuse arising in this case under § 707(b)(2), i.e., that the Debtors have abused the Bankruptcy Code by filing a chapter 7 case when they have sufficient income to fund a plan in a case under another chapter. At the hearing, the UST argued that, as alternative relief to dismissal, the case could be converted to chapter 13 and a plan proposed to repay creditors. The issue presented is whether, pursuant to 11 U.S.C.

1

§ 707(b)(2)(B), the Debtors have established sufficient grounds for the Court to find that special circumstances have arisen during the period of review of this bankruptcy case such that Debtors have rebutted the presumption they abused the Bankruptcy Code by filing their case as a chapter 7 and not as another chapter.[1]

The Court has subject matter jurisdiction of the parties' dispute pursuant to 28 U.S.C. § 1334 and § 157. The matter is a core contested proceeding pursuant to 28 U.S.C. § 158(b)(2)(A) (matters concerning the administration of the estate) and (b)(2)(O) (other proceedings affecting the liquidation of assets of the estate). The following represents the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rules 7052 and 9014. Where appropriate, a finding of fact shall be construed to be a conclusion of law, and vice versa.

Findings of Fact

The parties entered into the following Agreed Stipulations of Fact.

1. Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 22, 2007.

2. Debtors filed Official Form 22A (Statement of Current Monthly Income and Means Test Calculation) [hereinafter "Means Test"] and determined that the presumption of abuse arises in their case pursuant to 11 U.S.C. § 707(b)(2). [2]

3. The UST agrees that the presumption of abuse arises in this case.[3]

4. The UST timely filed a motion to dismiss in this case.

5. The Debtors filed a Declaration Regarding Special Circumstances claiming the Debtors' income has decreased from the amount they received during the six months prior to the

---

[1] The UST has not moved for dismissal under § 707(b)(3) which allows dismissal if "the debtor filed the petition in bad faith ... or ... [if] the totality of the circumstances ... of the debtor's financial situation demonstrates abuse." See In re Haman, 366 B. R. 307, 311 (Bankr. D. Del. 2007). Thus, this Court is not determining whether the Debtors' case should be dismissed under the totality of the circumstances test by considering all of the circumstances of the Debtors' financial situation, including their ability to fund a chapter 13 plan. Id. at 312.

[2] This presumption arises based upon the fact that the Debtors' annualized current monthly income of $60,764.04 exceeds the median family income for a family of 3 persons in Texas of $50,061.00. See Line 15 of Debtors' Form 22 A filed January 22, 2007 (Doc. #4).

[3] The UST filed a Statement of Presumed Abuse in the case on March 2, 2007 (Doc. #9). The Debtors filed a Declaration of Debtors Regarding Special Circumstances to Rebut Presumption of Abuse on April 13, 2007 (Doc. #16).

filing of their case.

6. On May 1, 2006, Mr. Tamez voluntarily left his job at Bank of America where he was a salaried employee. He took a job with Countrywide Mortgage where he was paid $3,000 per month for the first two months of employment, and then his compensation was solely from commissions beginning in July 2006. Mr. Tamez voluntarily ended his employment at Countrywide Mortgage and began working for Our Home Mortgage on a commission basis.

7. The Debtors' joint income from employment in 2004 was $68,195.51. The Debtors' joint income from employment in 2005 was $65,210.00.

After the hearing, the Court makes the additional findings of fact.

8. In their sworn affidavits made a part of Debtors's Declaration Regarding Special Circumstances to Rebut Presumption of Abuse, Debtors state that the change of employment by Mr. Tamez greatly reduced their income and their income is more accurately reflected on the line 4 of the Means Test for the 3 months preceding bankruptcy and as shown on Schedule I filed in the case on January 22, 2007.

9. On their Schedule F filed on January 22, 2007, the Debtors show $69,281.66 in unsecured nonpriority debt. The Debtors again repeat this number in their Declaration Regarding Special Circumstances to Rebut Presumption of Abuse filed in the case on April 13, 2007. There was no issue regarding this amount of unsecured debt.

10. Mr. Tamez is 46 years old and has a degree in business management from Tarlton State University. He has approximately 14 years in the home mortgage brokerage field.

11. About April 2006, Mr. Tamez left his job at Bank of America where he earned a base salary of $28,000 plus commissions handling home mortgages.

12. He left the job at Bank of America because he was approached by a bank customer and offered a job with that company, Countrywide Mortgage, because it needed a person who was bilingual to work with the company's Spanish-speaking customers. Mr. Tamez would be paid a salary for two months but thereafter would be paid commissions only. Mr. Tamez considered that this job offered him the opportunity to earn more money.

13. In July 2006, Mr. Tamez was offered another job in the home mortgage field by Our Home Mortgage, which later changed its name to Supreme Lending. He has worked at that

job since July 2006.   Mr. Tamez's salary is solely from commissions.

14.     Mr. Tamez works with home buyers who are Hispanic and have little to no credit history.  These buyers are higher risk borrowers who pay in cash and have little history with a banking institution.  These buyers obtain loans from sub-prime lenders.  Mr. Tamez testified as to the overall downturn in this market and the difficulty of qualifying these buyers for home loans, given that the qualification requirements change constantly.  He has about three loans that may close, however, he put the chances of closing these loans at a 50/50 chance.

15.     Mr. Tamez last received a check from his employer about six weeks ago.  Twice, his payroll checks had been returned for non-sufficient funds.

16.     Mr. Tamez has worked a second job.  He worked at Walgreens but was laid off in April 2007 in a "cut back" in work force when employees with the lowest average weekly hours were let go.  About a week prior to the hearing, he obtained a second job at Schwan's Food Company loading the trucks at night.  He provided no salary information about this new job.

17.     Mrs. Tamez's employment and level of pay has been steady.  She has been the main source of income for the family.

18.     The Debtors started having financial problems when Mr. Tamez still worked at Bank of America.  In April to May 2006, he contemplated filing bankruptcy.  He knew the difference between a chapter 7 and a chapter 13 case, but had no "inkling" what chapter to file, and they would file whichever type of bankruptcy case was better for their situation.

19.     Mr. Tamez has searched for a job to take the place of the one with Supreme Lending.  He has posted his resume on internet websites.  He has gone on job interviews, but most jobs available are sales jobs in industries in which he has no expertise, such as health care or insurance, and would pay only commissions.  These jobs all require "cold calls," something he is familiar with doing because he does these type of sales calls in the home mortgage market.

20.     He was offered a job with Gage Communications but he did not take this job because he did not have expertise in the telecommunications market and he believed, when faced with questions by a potential customer, a lengthy history in the business helps make a sale.  He would have been paid a base salary of $20,000 per year plus commissions, but in any months in which he did not hit the monthly sales target, he would not earn any commissions.

21. Mr. Tamez has had difficulty finding a job in the banking industry because his poor credit history and his bankruptcy filing acts as a bar to his being considered for banking jobs.

22. The Debtors' home mortgage lender has filed a motion to lift the stay on the Debtors' home because the Debtors are now three months in arrears on loan payments. The monthly payment is $977 without late fees.

23. The Debtors owe Members Choice for two cars, about $1900 on a 2001 Ford Taurus and about $900 on a 1999 Chevy Cavalier, plus a signature loan to Members Choice of about $800. The loans are cross-collateralized. The payment to Members Choice is about $600 per month.

## Conclusions of Law

Here, because the presumption of abuse has arisen, the following subsection of § 707(b)(2) applies:

> (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment to income and to provide–
>     (I) documentation for such expense or adjustment to income; and
>     (II) a detailed explanation of special circumstances that make such expenses or adjustment to income necessary and reasonable.
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.
> (iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of –
>     (I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or
>     (II) $10,000.

The UST argues the Debtors did not itemize their adjustments to income nor did they

provide documentation of the adjustments. For example, the Debtors could have introduced into evidence bank statements showing their deposits over the past months, or they could have obtained evidence from Mr. Tamez's employers describing any commissions Mr. Tamez has received (or not received) since the filing of this case. The UST argues that Mr. Tamez's testimony at the hearing does not qualify as providing documentation for the claimed negative adjustment to income. Further, if the Court were to find that special circumstances exist, the UST argues the Debtors failed to prove that the resulting adjustment to income would result in there being no presumption of abuse in this case.

  Debtors argue that, by the testimony under oath of Mr. Tamez at the hearing, they proved their loss of income caused by Mr. Tamez's choice of jobs, jobs that had the possibility to provide the Debtors with more income but did not due to economic market factors beyond the Debtors' control. They assert that their financial situation is further hampered by having a bankruptcy on their credit report which lessens employment opportunities for Mr. Tamez in his area of expertise, the lending industry, and his inability to keep his part-time job because of a lay-off by the employer. They argue that Mr. Tamez's testimony is bolstered by the filing of a motion for relief from stay by their home mortgage company in their bankruptcy case because of the Debtors' inability to make their most recent three months of mortgage payments. They argue that the UST, through her cross-examination of Mr. Tamez, did not dispute their loss of income. Debtors assert that the testimony of Mr. Tamez, combined with the documentation filed in their bankruptcy case, being the stipulations of fact with the UST, their Schedules I and J, and their sworn declaration of special circumstances, are sufficient to document their loss of income. Finally, Debtors argue, that because of the Means Test addition to the Bankruptcy Code put in place by BAPCPA, there is little relevant case law on the issue of a debtor trying to prove a loss of income caused by job change, with most of the cases focusing on additional expenses incurred by the debtors.

  Section 707(b)(2) includes both procedural and substantive elements. The substantive requirement found in § 707(b)(2) requires that the debtor demonstrate "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, ... that justify additional expenses or adjustments of [the debtor's] current monthly income for which

there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). This Court must decide whether Mr. Tamez's job changes, both voluntary and not a listed example of a special circumstance in § 707(b)(2)(B), and occurring during the six-month review period encompassed by the Means Test, are a special circumstance that justifies a downward adjustment to the Debtors' monthly income.

The term "special circumstances" is not limited to circumstances outside of a debtor's control, thus, it is possible for situations within the debtor's control to be a special circumstance. See In re Graham, 363 B.R. 844, 850 -851 (Bankr. S.D. Ohio 2007) (requirement that debtor work in another state when he could not find employment in his home state, and the remainder of the family not being able to move because of custody orders was special circumstance allowing additional expenses deductions which lowered income below presumption of abuse level); In re Haman, 366 B.R. 307, 313 (Bankr. D. Del. 2007) (Debtor's showing that she was co-signor on student loan, it was a nondischargeable debt, and her son was not making the payments, showed she was left with no reasonable alternative but to pay the debt, thus a special circumstance existed). Thus, special circumstances are not limited to those "narrow and defined categories of special circumstances described in section 707(b)(2)(B)," such as "a serious medical condition or a call or order to active duty in the Armed Forces." Haman, 366 B.R. at 312 ("Congress' use of the words 'such as' to introduce the examples [serious medical illness or call to military duty] indicate its intent to provide a non-exhaustive list of illustrations rather than to constrict any application of the statute."); see also In re Littman, 2007 WL 1957175 (Bankr. D. Idaho 2007) at 7 (in deciding whether an event could be a special circumstance, the court adopted "a fact-specific, case-by-case approach to assessing special circumstances under the several requirements of § 707(b)(2)(B)"). In contrast, "this exception is not available to justify the approval of expenses incurred merely at a debtor's discretion.... [but] the parameters of acceptable expenses must be strictly construed to allow only those expenses which are truly unavoidable to the debtor." Id. at 314-15. "[T]he plain language of section 707(b)(2)(B) is clear-for a debtor to successfully obtain an additional expense or adjustment of [current monthly income], she must demonstrate a special circumstance which leaves her with no reasonable alternative but to incur the expense or cause the income adjustment." In re Haman, 366 B.R. at

313; see also, In re Thompson, 2007 WL 1880290 (D. Ohio June 29, 2007) at 9 (court denied retirement loan payments as additional expenses, finding that a situation as common as a withdrawal from a retirement plan cannot be a special circumstance when only provided testimony by the debtors of their general inability to pay bills and no itemization or detail; the debtors must provide more evidence that the circumstances under which the debtor needed to borrow were "special").

Here, the Court finds that Mr. Tamez's job changes are a special circumstance. Mr. Tamez changed jobs prior to filing bankruptcy in the hopes of increasing his income, actions which later proved to be unsuccessful for reasons out of his control. There is no evidence that he changed jobs to lessen income for bankruptcy filing purposes. Mr. Tamez's job changes are considered special circumstances for which, if he has met the procedural requirements stated below, he can assert a downward adjustment to income.

The procedural elements of § 707(b)(2) are set forth in 11 U.S.C. § 707(b)(2)(B)(ii). These requirements for a debtor to establish each special circumstance resulting in an added expense or change to income require the debtor: 1) to itemize each expense or adjustment, 2) to support each expense or adjustment with documentation, 3) to explain of why each expense or adjustment is necessary and reasonable, and 4) to swear to the accuracy of the information. This Court must decide whether the Debtors' filing of a declaration in support of rebutting the presumption of abuse, along with Mr. Tamez's testimony, meets this procedural requirement. Other than to file a declaration rebutting the presumption of abuse, and to point to the schedules filed with the petition, Mr. Tamez provided no documentation, as the UST asserts he must have done, to corroborate his claim of decreased income.

A review of some of the case law, at least from what appears in the text of the opinions, shows that some courts have considered the debtor's testimony sufficient to provide the itemization of additional expenses required by § 707(b)(2)(B)(ii). See In re Graham, 363 B.R. 844, 851- 852 (Bankr. S.D. Ohio 2007) (only evidence was testimony of the debtor and information listed on their Means Test calculation form). That court stated "[a]lthough the Debtor's evidence may be described as marginal, in that it lacked great specificity and documentary support, it was sufficient to carry the Debtor's burden of a preponderance of the

evidence." Id. at 852 n.6.  Likewise, in In re Oliver, 350 B.R. 294 (Bankr. W.D. Tex. 2006), the debtor filed a declaration regarding special circumstances to rebut the presumption of abuse and testified as to the need for additional expenses but provided no documentary evidence.  As to vehicle expenses, the Oliver court allowed an additional expense for gasoline because it was supported by the debtor's testimony regarding the use of his vehicle for work and the miles he must drive for his job.  Id. at 302.  However, the court denied other transportation expenses, such as a proposed, anticipated car payment to be incurred in the future when the debtor replaces his high mileage vehicle and some other expenses because the debtor provided no evidence of these expenses at all.  Id.  Likewise, the court denied expenses about which the debtor testified, but provided no corroborating documentary evidence, and for which there was controverting testimonial evidence.  For example, the court denied expenses of a claimed serious medical illness about which the debtor testified but for which there was no documentary evidence and for which the debtor's testimony regarding his steady work history refuted the seriousness of this medical condition.  Id. at 303.  Second, the court denied a claimed loss of income because the debtor also testified that this possible decrease in income was due to an "anticipated" job change with his current employer but for which he provided no specific information, and, as of the hearing date, he had not changed jobs.  Id. at 298. required by

       It has been an easier decision for a court to determine that the requirements of § 707(b)(2)(B)(ii) have been met when the debtor has submitted a declaration in support of rebutting the presumption of abuse, which is attested under oath and describes in detail, the circumstances necessitating an additional expense, and to which supporting documentation is attached.  See In re Haman, 366 B.R. at 312.  The Haman court allowed the debtor to deduct an expense for a student loan payment on which she was liable because she provided the court with a copy of the loan and provided testimony at the hearing why she, and not her child, must make the payment.  In re Haman, 366 B.R. at 312.

       The available case law deals, for the most part, with how a debtor can prove a claim for additional expenses.  There is no case law directed solely at proving an adjustment to income.  However, the cases regarding the allowance or disallowance of additional expenses provide guidance to how a debtor can prove an adjustment to income.

At the time of filing, Mr. Tamez was working two jobs. In April 2007, he lost the second job but, about a week prior to this court hearing, he had started a new, second job. Since Mr. Tamez left his job with the Bank of America, his financial condition has seriously deteriorated from a combination of the decline in the sub-prime mortgage lending market that has greatly affected his income from Supreme Lending and his inability to find a better paying job in the banking industry because of his own poor credit history. His approximate 14 year expertise is in the loan origination business for the Hispanic, Spanish-speaking market. He credibly testified that these borrowers, having no credit history, must borrow from sub-prime lenders and have difficulty obtaining home loans, and due to the recent downturn in this market, have an increasingly difficult ability to obtain a loan. Also, the qualifications for borrowers are constantly changing, making borrowers subject to constantly changing rules. Thus, Mr. Tamez's prospects for a better-paying job in his area of expertise are not good. Mr. Tamez testified that, as of the hearing, his financial situation had not improved and was worse.

Mr. Tamez credibly testified why he has not accepted a sales job in areas where he has little expertise, such as in the health care, insurance, and telecommunications fields. He testified that he was not familiar with those industries and he believed that, without an extensive background in them, he would lose customers to salesmen with histories in those businesses. Additionally, most of the jobs offer salaries based on straight commission.

The Debtors are behind on the last three payments owed on his house mortgage of $997 per month, and the mortgage lender has filed a motion for relief from stay. Mr. Tamez has outstanding car loans totaling $2800 and an $800 signature loan secured by the vehicles. His total car and house payments are approximately $1600 per month. Mrs. Tamez receives about $1678 in net take home pay, barely enough, without considering other monthly expenses, to make these payments.

The Court finds the Debtors have met the procedural requirements of §§ 707(b)(2)(B)(ii) and (iii). In their sworn declaration, they point to specific information shown in the Means Test and in their Schedules I and J which they believe is an accurate reflection of their current income. It is correct that the Debtors did not provide any sort of corroborating documentation, such as copies of bank statements and/or information from employers regarding income, to show the

decrease in income, and this would have been helpful. However, Mr. Tamez provided credible testimony about his job situation and the Debtors' historical and current income, information certainly within his personal knowledge.

The Court finds support for the ability to look at events occurring both prepetition and postpetition to the Debtors's situation by the cases of In re Singletary, 354 B.R. 455 (Bankr. S.D. Tex. 2006) and In re Cortez, 457 F.3d 448 (5th Cir.2006). In Singletary, the court determined that it was bound to follow the controlling precedent of Cortez, and although the appellate court analyzed a pre-BAPCPA version of § 707(b), it found that a bankruptcy court could look at post-petition events, not just income and expenses existing on the petition date, when deciding a motion to dismiss under § 707(b)(3). Singletary, 354 B.R. at 464-65. Following Cortez, the Singletary court determined that the means test calculation should occur as of the filing of the trustee's motion to dismiss, and the court was allowed to consider any changed circumstances of the debtor between the filing of the petition and the filing of the motion. Id. at 466 (citing Cortez, 457 F.3d at 450-55). Here, the UST filed the motion to dismiss on March 28, 2007, thus, information since the filing in January 2007 that the Debtors' financial situation has gotten worse should be considered and provides support for considering their claimed reduction to income.

In their sworn Declaration of Special Circumstances, paragraph 2, the Debtors state that the income shown on the Means Test for Months 3-1 on line 4 and on Schedule I more accurately reflects Mr. Tamez's current income as a loan officer.

Considering the Means Test information, the last three months on the Means Test on line 4 show Mr. Tamez to have a monthly average net income from Supreme Lending of $1331 (this is the average of $1602 for Month 3 (October 2006), $1220 for Month 2 (November 2006), and $1172 for Month 1 (or the last month before filing bankruptcy, December 2006)). Using this $1331 monthly average income, and adding it to Mrs. Tamez's stable monthly income of $2384 (shown on line 11 of the Means test), Debtors have current monthly income of $3715. Multiplying $3715 by 12, they have Annualized Current Monthly Income of $44,580, an amount less than $50,061 shown as the Texas median family income for a family of three persons, thus, there is no presumption of abuse (see lines 13-15 of the Means Test).

However, Mr. Tamez's testimony shows that he had nearly always had a second job during the time period at issue, and although he did lose the Walgreens job, he had recently

obtained a second job at Schwan's Foods but he provided no financial information about this job. Considering that Mr. Tamez earns at his Schwan's job about the same as he earned from October through December 2006 at Walgreens, this approximately $874 average monthly income should be included[4] with his net income from Supreme Lending. Thus, his total income for this three-month period from his two jobs was, on average, $2205 ($1331 plus $874) for October through December 2006. Using this $2205 average income, and adding it to Mrs. Tamez's stable monthly income of $2384 (shown on line 11 of the Means Test), Debtors have current monthly income of $4589. Multiplying $4589 by 12, the Debtors have Annualized Current Monthly Income of $55,068, an amount greater than $50,061 shown as the Texas median family income for a family of three persons, and causing the Debtors to continue on through the Means Test (lines 13-15). The $4589 total current monthly income is compared with the Debtor's total monthly deductions and expenses of $4478 (lines 48-49), resulting in $111 as monthly disposable income, which is then multiplied by 60, resulting in $6660 as the Debtors' 60-month disposable income (lines 50-51). That $6660 is then applied to the test at line 52, and because this number is at least $6000 but not more than $10,000, the Debtors must continue on through the Means Test. The Debtors then fill in their total non-priority unsecured debt of $69,281, and calculate 25% of this number, or $17,320 (lines 53-54). Because $6665 is less than $17,230, the Debtors have completed the Means Test, and there is no presumption of abuse (line 55). Thus, the Debtors' income, as adjusted is, below the means test thresholds contained in § 707(b)(2)(B)(iv)(I) and (II), and the Debtors have rebutted the presumption of abuse.

The Debtors also point to the income in their Schedule I and J filed as of January 22, 2007 [and which are to show income and expenses at the time the case is filed] as being a more accurate indication of their true income. Schedule I shows that Mr. Tamez makes $4194.57 in monthly income. That number is added to Mrs. Tamez's monthly income of $1678 ($2028.65 gross less $350.65 in payroll deductions), giving $5872.57. Then, deducting the expenses shown on Schedule J, including the $1551 business expenses, the Debtors have a negative $223.92 in disposable income.

---

[4]This $874 average is found by adding $1123.94 for Month 3 (October 2006), $694.48 for Month 2 (November 2006), and $802.38 for Month 1 (or the last month before filing bankruptcy, December 2006), and then dividing by three.

The Debtors' having rebutted the presumption of abuse, their chapter 7 case will not be dismissed. An Order consistent with this Memorandum Opinion will be entered simultaneously on the docket.

# # #